UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X  Docket No.: 15-CV-2845
ZBIGNIEW PAPIEZ,

                      Plaintiff,

              -against-

HOME DEPOT U.S.A., INC.
                    Defendant.
-----------------------------------------------------------------X

**DECLARATION OF DAVID POLLIACK IN REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO AND IN FURTHER SUPPORT OF HOME DEPOT U.S.A., INC.'S MOTION TO PRECLUDE PLAINTIFF'S ORTHOPAEDIC EXPERT ANDREW MEROLA, M.D.**

       **PLEASE TAKE NOTICE**, that upon the annexed Memorandum of David M. Pollack, Esq., an attorney duly admitted to practice law before the Courts of the State of New York and in this Court, declares the truth of the following under penalties of perjury pursuant to 28 U.S.C. § 1746:

       1. As counsel for the Home Depot U.S.A., Inc., I am fully familiar with the facts and circumstances of this matter.

       2. This Declaration is submitted in reply to Plaintiff's opposition to and in further support of Home Depot U.S.A., Inc.'s motion to preclude Plaintiff's orthopedic expert, Andrew Merola, M.D.'s expert testimony.

       3. True and accurate copies of the following documents are submitted in reply to the motion:

- Dr. Andrew Merola's "Initial Evaluation" dated February 3, 2014.
- Cited portions of Joseph M. Feller's Deposition Transcript, Pages 55, 69, 70, 71, 72, 73, 74.

Dated: New York, New York
       January 3, 2018

4844-3595-3754.1

LEWIS BRISBOIS BISGAARD & SMITH, LLP

By: _____

David M. Pollack (DP6143)
Michael N. Giacopelli (MG4170)
Meagan M. Kelly (MK7981)
*Attorneys for Defendants Home Depot U.S.A., Inc.*
77 Water Street – Suite 2100
New York, New York 10005
212.232.1300

TO:

Howard Engle, Esq.
Edelman & Edelman, P.C.
*Attorneys for the Plaintiff*
*Zbigniew Papiez*
61 Broadway, Suite 2220
New York, New York 10006
212-943-1200

# ANDREW MEROLA, M.D.
Spine Surgeon
Associate Professor Of Orthopedic Surgery
State University Of New York – Brooklyn
567 1st Street
Brooklyn, New York 11215
Telephone (718) 783-5542
Fax (718) 398-8995

**PATIENT:** ZBIGNIEW PAPIEZ

**DATE:** February 3, 2014

**INITIAL EVALUATION:**

Mr. Papiez is a very pleasant 45-year-old gentleman. He is right hand dominant. I have previously treated him for a disc herniation at C5-C6 and he has done quite well up until 10/31/2013 whereby he sustained a trauma having a load of bricks fall onto his head. Since that time, he has been having significant neck pain and headaches with upper extremity pain and particularly right greater than left upper extremity numbness, tingling and weakness. This is concerned him to the point where he has referred to me by Dr. Areta Podhorodecki for evaluation and management and a surgical consultation regarding his neck. He is kind enough today to bring in his magnetic resonance imaging film and is accompanied to the office today with his daughter. He indicates no interval history of trauma. He was in home depot at that time when this happened. He is presently on hydrocodone as well as gabapentin. He reports no drug allergies. I performed upon him on ACDF at the C5-C6 segment in 2007. That was as a consequence of an industrial accident.

**PHYSICAL EXAMINATION:** Physical findings on examination today demonstrate that Zbigniew is otherwise alert and oriented x4. His mentation and affect are appropriate. He has bilateral heel-to-toe reciprocal gait. He appears to have no focal cranial nerve deficits. He does have rather significant spasm and tenderness present and palpable in his neck. Cervical spinal extension is approximately 15-20 degrees beyond which significant spasm is palpable, forward flexion 35 degrees, right lateral bending 25 degrees, left lateral bending 30 degrees, right lateral rotation 25-30 degrees and left lateral rotation 30 degrees. Spasm and tenderness present and palpable beyond those ranges of motion. Compression distraction maneuver and Spurling's maneuver reproduce pain into the upper extremity arms and hands somewhat worse on the right than on the left sides. There is a loss of the bilateral brachioradialis reflexes and there is a loss of the right triceps reflex. There is a loss of sensation in the C6 distribution of the upper extremity arms and hands as well as the C7 distribution of the upper extremity arms and hands with more dense sensory loss on the right side than on the left side. There is right-sided greater than left sided C7 myotomal loss. There are no pathological reflexes are presently noted or appreciated. There is some thoracic spasm. There is some low back spasm. There is mild reversal of lumbar lordosis upon ascent. There are no neurological deficits to the lower extremities. There is no spasticity. There is no clonus.

**MRI SCANS:** Magnetic resonance imaging scan demonstrates a right paraforaminal herniation at C6-C7 subadjacent to the prior fusion site.

February 3, 2014

RE: Zbigniew Papiez                                                                                         Page 2

**IMPRESSION AND PLAN:** At this juncture, I sat down with Mr. Papiez and had a lengthy and detailed conversation with him outlining his treatment options and alternatives to include nonsurgical care and management versus surgical care and management, surgical procedure and type and realistic goals and expectations therein. My hope is that surgery is the last resort. Prior to considering formal surgery I would have him undergo epidural steroid injections under the auspices of Dr. Grimm. In fact we are going to have an appointment with Dr. Grimm's office and I have provided him with a note to bring to Dr. Grimm. Should conservative treatment fail one may consider the surgery as outlined above.

Sincerely,


Andrew Merola, M.D.

AM/bk

```
 1                  J. FELLER
 2   the building would be shrink wrapped.
 3        Q.   That is to prevent the item
 4   from falling onto a customer, correct?
 5        A.   Or an Associate.
 6        Q.   Right, of course, anyone,
 7   right.  Correct?
 8        A.   Correct.
 9        Q.   Did the planogram depict any
10   kind of netting that should be in front of
11   any of the shelves to prevent items from
12   falling onto a customer or an Associate?
13        A.   No planogram -- the planogram
14   wouldn't have a mesh netting in the photo.
15             But the planogram -- the
16   planogram for this department here
17   (indicating) is a planogram for everything,
18   everything that is in within the
19   department, not only is it just the bricks.
20             The bricks may not been in the
21   planogram itself.  But the planogram will
22   state what is in the department as a whole.
23        Q.   Does the planogram show that
24   this should be -- that there should be
25   netting in front of any of the shelves in
```

```
 1                    J. FELLER
 2   first shelf.
 3       Q.    The planogram, did it show both
 4   the self help area as well as the overhead
 5   area?
 6            MR. POLLACK:   The self help
 7       area meaning the first shelf?
 8            MR. ENGLE:   Yes.
 9       Q.    Does the planogram depict the
10   first shelf where you see the bricks are
11   depicted in Exhibit 1?
12       A.    The planogram for this
13   department may state that other things,
14   where they belong.  Sand bags, masonry
15   tools, buckets of cement, whatever it may
16   be.
17            Pertaining to the bricks, the
18   planogram may not state where the bricks go
19   in the planogram.
20            The planogram may state a
21   facade of a horseshoe.  It tells you
22   things.
23            It may not -- it may not say
24   exactly the level and the height, specifics
25   of the brick.  I can't recall.
```

```
 1                    J. FELLER
 2        Q.    That is what I'm trying to
 3   understand.
 4              I'm going to ask it.  I think I
 5   know your answer.  I'm going to ask it as a
 6   straight-up question.
 7              Did the planogram depict where
 8   the pallet of bricks are supposed to be
 9   placed for self help for the customers?  On
10   the floor, on the first shelf, or somewhere
11   else?
12        A.    I can't recall.
13        Q.    Did the planogram specifically
14   say that bricks can be stored on that first
15   shelf?
16              MR. ENGLE:  Withdrawn.
17        Q.    Did the planogram specifically
18   show bricks on the first shelf?
19              MR. POLLACK:  Objection.
20              He told you he doesn't recall
21        what the planogram says about bricks,
22        if anything.
23              How can he answer that
24        question?
25        A.    I don't recall the placement of
```

```
 1                      J. FELLER
 2     the location of the bricks.
 3              I can tell you, though, in the
 4     planogram, the planogram does state what's
 5     within the department.
 6         Q.   Do you recall if the planogram
 7     depicted whether bricks are to be stored --
 8              MR. ENGLE:   Withdrawn.
 9         Q.   Do you recall, did the
10     planogram show that bricks to be accessed
11     for self help were supposed to be on the
12     ground or on the first shelf?
13              MR. POLLACK:   Same objection.
14         A.   I do not recall the placement
15     of what the bricks are supposed to be.
16              I can tell you in the planogram
17     what is in the department.  The tools,
18     buckets (indicating) a mop --
19         Q.   I understand.
20         A.   -- a broom that is there.
21              MR. POLLACK:   Let him finish.
22         Q.   Are you finished with your
23     answer?
24              Sir, let me ask you this:   This
25     photograph, Exhibit 1 of May 26th, 2016,
```

```
 1                    J. FELLER
 2    shows a pallet of bricks on the first
 3    shelf, correct?
 4         A.    Correct.
 5         Q.    Is that the place where the
 6    planogram showed the bricks is supposed to
 7    be?
 8         A.    Probably not.
 9               That is not -- like I said, it
10    is a designated area from the store's
11    standpoint.
12         Q.    Did the planogram show that the
13    bricks are supposed to be on the floor?
14         A.    I don't recall what the
15    planogram really says pertaining to the
16    bricks.
17               It may be there.  It may not be
18    there.  But this is store standards.
19         Q.    Thank you, sir.  Thank you for
20    your testimony.
21               One more last question.  What
22    is your date of birth?
23         A.    Why?
24         Q.    In the event that you move, and
25    we need to subpoena you for trial, we need
```

```
 1                    J. FELLER
 2    to find you.
 3              MR. POLLACK:  You can copy us.
 4        You can ask us.  And we will -- we
 5        will make him available or make our
 6        best efforts to find him, make him
 7        available if he moves.  I'll ask him
 8        to let us know if he moves.
 9              But if he doesn't want to give
10        you his date of birth, I can't direct
11        him to do that.  That's his personal
12        choice.
13        Q.    Would you give us your date of
14    birth?
15        A.    No.
16        Q.    Thank you, sir, for your time.
17              MR. POLLACK:  I have one quick
18        question.
19   EXAMINATION BY
20   MR. POLLACK:
21        Q.    I want to clear this up with
22    the planogram.
23              Do you have a specific
24    recollection of --
25              MR. POLLACK:  Withdrawn.
```

```
 1                    J. FELLER
 2         Q.    You have testified that you
 3   recall seeing a planogram at the store,
 4   correct?
 5         A.    Correct.
 6         Q.    It was hanging somewhere --
 7         A.    It was hanging right by the
 8   tool rental.
 9         Q.    That is to the right of the
10   shelf that is depicted in the photograph?
11         A.    If I'm looking at it straight,
12   yes.
13         Q.    Do you have a specific
14   recollection of ever seeing a planogram
15   that identified where bricks are supposed
16   to be stored or displayed?
17         A.    No.
18         Q.    Do you have a recollection of
19   seeing other products, other than bricks,
20   where they were supposed to be stored?
21         A.    Yes.
22         Q.    But you don't recall whether or
23   not bricks were on that planogram, correct?
24         A.    Correct.
25                MR. POLLACK:  That's it.
```

DIAMOND REPORTING  (877) 624-3287    info@diamondreporting.com