UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ZBIGNIEW PAPIEZ,

                Plaintiff,                           MEMORANDUM
                                                         AND ORDER
    -against-                                          15 CV 2845 (ERK)(RML)

HOME DEPOT U.S.A, INC.,

                Defendant.
---------------------------------------------------------X
LEVY, United States Magistrate Judge:

        Defendant Home Depot U.S.A., Inc. ("defendant") moves to sanction plaintiff Zbigniew Papiez ("plaintiff") pursuant to Federal Rule of Civil Procedure Rule 37.  First, defendant moves to preclude the rebuttal report of Dr. David Payne, arguing that plaintiff's failure to disclose the report in a timely manner was based on a lack of due diligence in uncovering a magnetic resonance imaging report from 2006 (the "MRI" or "2006 MRI").  (See Affirmation of David Pollack, Esq. in Support of Home Depot U.S.A., Inc.'s Motion to Preclude Dr. Payne's Rebuttal Report, dated Sept. 15, 2017 ("Payne Mot."), Dkt. No. 21-1.)  Second, defendant seeks to preclude the expert report of Dr. Andrew Merola on untimeliness grounds, and to limit the scope of Dr. Merola's testimony as a treating physician.  (See Affirmation of David Pollack, Esq. in Support of Home Depot U.S.A., Inc.'s Motion to Preclude Plaintiff's Orthopedic Expert Andrew Merola, M.D., dated Nov. 17, 2017 ("Merola Mot."), Dkt. No. 27-1.)

        I heard argument on February 23, 2018.  (See Transcript of Oral Argument, dated Feb. 23, 2018 ("Tr."), Dkt. No. 35.)  For the reasons set forth below, defendant's first motion is denied, and defendant's second motion is granted in part.  The second motion is granted insofar as Dr. Merola's expert report will be precluded, but the court disagrees with defendant's

understanding of the scope of permissible treating physician testimony in this circuit. At trial, Dr. Merola may testify as a fact witness, provided his testimony is in accordance with the principles explained herein.

## BACKGROUND

### I. The 2006 MRI

In 2013, plaintiff allegedly sustained an injury to his lower neck area while in a Home Depot store in Glendale, New York. (See Verified Complaint, dated June 30, 2014, annexed as Ex. A. to Notice of Removal, dated May 18, 2015, Dkt. No. 1-1.) Plaintiff claims that, after he removed a brick from a stack, he was "struck violently on the head and neck" by falling bricks. (See Payne Mot. ¶ 3.) A critical issue in this case is whether plaintiff's "claimed condition, a disc herniation/bulge at the C6-C7 level . . . was in fact, a pre-existing condition from an unrelated prior 2006 work place accident fall from a ladder," as opposed to a condition that resulted from the Home Depot incident alone. (See id. ¶ 7.)

Dr. Andrew Merola treated and performed fusion surgery on plaintiff after his 2006 worksite accident. Prior to that surgery, an MRI was performed on plaintiff. Dr. Merola also treated and performed surgery on plaintiff following the 2013 accident. (Merola Mot. ¶ 7.)

As part of defendant's initial discovery requests, defendant sought authorizations for any and all medical records from the 2006 incident. (See Payne Mot. ¶ 9.) Plaintiff did not produce any MRI in response to this request. (Id.) In December 2016, defendant's expert Dr. Paul Kuflik, after reviewing other physicians' reports, alerted counsel to the existence of the 2006 MRI. (Id. ¶ 10.) Defendant's counsel thus began contacting plaintiff's counsel to inquire

about the MRI.[1] (Id. ¶ 11–13.) Plaintiff's counsel did not respond. As defendant was unaware of the name of the facility that performed the 2006 MRI, there was no further action defendant could take to procure it. (Id. ¶ 10.)

Although plaintiff's counsel was initially unaware of the name of the facility that performed the MRI, it learned that information in October 2016 from workers' compensation files concerning the 2006 incident. (See Affidavit of Paralegal Piotr Zabrowski in Opposition to Defendant's Motion to Preclude the Rebuttal Report of David Payne, M.D., dated Oct. 13, 2017 ("Zabrowski Aff."), annexed as Ex. B to Declaration of Howard Engle, Esq. in Opposition to Defendant's Motion to Preclude the Supplemental Report of David Payne, M.D., dated Oct. 13, 2017 ("Engle Decl."), Dkt. No. 24-3, ¶ 3.) These files included a report identifying the facility as Dove Open MRI ("Dove"). (Id.) After learning the name of this facility, plaintiff's counsel's paralegal, Piotr Zabrowski, asked plaintiff to search his home for the MRI. (Id. ¶ 4.) When plaintiff was unable to locate the MRI, Mr. Zabrowski learned that Dove was succeeded by a facility named East Manhattan Diagnostic Imaging ("EMDI"). (Id. ¶ 5.) Mr. Zabrowski called EMDI to inquire about plaintiff's records and was told by a record custodian that although the facility did in fact retain records from Dove, the system had no record of plaintiff. (Id. ¶ 6.)

Mr. Zabrowski, taking the record custodian at his word, did not process a HIPAA request, subpoena, or any other formal authorization on plaintiff's behalf. (Id. ¶ 7.) When defendant's counsel began making its requests for the MRI two months later, in December 2016

---

[1] On January 4, 2017, defendant's counsel called plaintiff's counsel's office and requested a copy of the 2006 MRI. After plaintiff's counsel reported that it was not in possession of the MRI, defendant's counsel followed up with an email later that day. In the email, defendant's counsel referenced the 2006 MRI and attached Dr. Merola's report referencing the MRI. (See Payne Mot. ¶ 11.) The following day, defendant's counsel reiterated its request for the 2006 MRI and additionally requested an authorization to obtain the MRI independently. (Id. ¶ 12.)

(at the request of its medical expert, Dr. Kuflik), plaintiff did not provide defendant with the name of the facility. (See Payne Mot. ¶ 9.) When defendant's counsel repeated its request, even requesting an authorization to conduct its own independent search, plaintiff's counsel still failed to provide the name of the facility. (See Tr. at 16:5–13.)

On February 14, 2017, three days prior to the close of discovery, defendant sent plaintiff a demand for authorizations to request records from EMDI. (See Payne Mot. ¶ 16.) Plaintiff returned the authorization on February 23, 2017. Defendant received the MRI on March 21, 2017 and shared it with its experts, who submitted two supplemental reports opining on the MRI on April 26, 2017. (Id. ¶ 17.) Notably, *neither party* requested that I extend the discovery deadline prior to this exchange.

After reviewing the expert reports, plaintiff obtained a copy of the MRI from defendant, which it shared with Dr. Payne on May 19, 2017. (See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Preclude the Rebuttal Report of David Payne, M.D., dated Oct. 13, 2017 ("Pl.'s Opp. to Payne Mot."), Dkt. No. 25-1, at 2.) On June 15, 2017 plaintiff sent Dr. Payne's rebuttal report to defendant. (See Report of David Payne, M.D., dated June 2, 2017 ("Payne Rebuttal"), annexed as Ex. O to Payne Mot., Dkt. No. 21-16.) Defendant, asserting that "plaintiff should not be rewarded for what … is, at best, his lack of diligence," objected to the rebuttal report as untimely. (See Payne Mot. ¶ 24.)

## II. Dr. Merola's Testimony

On February 17, 2017, the parties simultaneously exchanged several expert reports. (See Merola Mot. ¶ 6.) Defendant designated experts in radiology and orthopedics. (Id.) Plaintiff designated experts in radiology, economics, physical medicine and rehabilitation, and rehabilitation nursing/life care planning. (Id.) While plaintiff had previously submitted

4

records of Dr. Merola's treatment of plaintiff, he did not designate Dr. Merola—or anyone else—as an expert in orthopedics. (Id. ¶¶ 6–7.) During a February 23, 2017 telephone conference with the court, defendant's counsel noted plaintiff's failure to designate an expert in orthopedics. (See Merola Mot. ¶ 3.) According to defendant's counsel, plaintiff's counsel "expressly confirmed that plaintiff's orthopedic surgeon, Dr. Merola, would not be offered as an expert witness, but would be offered as a treating physician, only." (See Merola Mot. ¶ 4.)

On April 26, 2017, the same day that defendant filed its expert reports addressing the 2006 MRI, plaintiff formally designated Dr. Merola as an expert in orthopedic surgery and disclosed his expert report, which includes various conclusions styled as expert opinions. (See Report of Dr. Andrew Merola, M.D., dated Apr. 4, 2017 ("Merola Report"), annexed as Ex. A to Plaintiff's Notice of Expert Witness Exchange, dated Apr. 19, 2017, annexed as Ex. D to Merola Mot., Dkt. No. 27-5.) Defendant objected to the designation of Dr. Merola as an expert and disclosure of his report as untimely, and now urges the court to limit the scope of Dr. Merola's testimony regarding causation, prognosis, and future treatment, as "these are the areas within the realm of expert opinion." (See Reply Memorandum to Plaintiff's Opposition to and in Further Support of Home Depot U.S.A., Inc.'s Motion to Preclude Plaintiff's Orthopedic Expert Andrew Merola, M.D., dated Jan. 3, 2018 ("Reply Mem."), Dkt. No. 31-1, at 5.)

## DISCUSSION

### I. Motion to Preclude Dr. Payne's Rebuttal Report

#### A. Legal Standard

Federal Rule of Civil Procedure 26(a) provides that a party's initial disclosures must include "a copy—or a description by category and location—of all documents, [including] electronically stored information . . . that the disclosing party has in its possession, custody, or

5

control." FED. R. CIV. P. 26(a)(1)(A)(ii). "A party is not excused from making its disclosures because it has not fully investigated the case." FED. R. CIV. P. 26(a)(1)(E). Rule 26(e) provides that

> [a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

FED. R. CIV. P. 26(e). "The federal discovery rules place a duty on a party to turn over not only proper materials of which he is aware, but also those of which he reasonably ought to have been aware." Arthur v. Atkinson Freight Lines, Corp., 164 F.R.D. 19, 20 (S.D.N.Y. 1995).

To ensure compliance with these basic discovery rules, Federal Rule of Civil Procedure 37(c)(1) provides that if a party fails to provide information as required by Rule 26(a) or (e), the court may prohibit the party's use of that information in later proceedings unless the party's failure to provide the discovery information was "substantially justified or harmless." FED. R. CIV. P. 37(c). However, after the opposing party has had the chance to be heard on the issue of preclusion, the court may impose less severe sanctions. See Design Strategy, Inc. v. Davis, 469 F.3d, 284, 298 (2d Cir. 2006) ("[T]he plain text of the rule provides that if an appropriate motion is made and a hearing has been held, the court does have discretion to impose other, less drastic, sanctions."). For example, the court may order payment of reasonable expenses, inform the jury of the party's failure, or impose other appropriate sanctions. FED. R. CIV. P. 37(c)(1)(a)-(c).

In deciding whether preclusion is appropriate, Second Circuit courts are guided by the four Softel factors: (1) the party's explanation for its failure to comply with Rule 26's

6

requirements; (2) the importance of the precluded information; (3) the prejudice suffered by the opposing party as a result of having to prepare to address the new evidence; and (4) the possibility of a continuance.  Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997).  Preclusion is an extreme sanction, and before granting a preclusion motion, the court "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses."  Outley v. New York, 837 F.2d 587, 591 (2d Cir. 1988). Courts have "broad discretion" to determine the nature of any sanction that should be imposed under Rule 37, "based on all the facts of the case."  Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012).

      B. Analysis

Plaintiff's explanation for his failure to disclose the rebuttal report— that counsel did not believe the MRI existed—is not sufficient.[2]  The two separate references to the MRI provide a strong basis for believing that the MRI did exist at some time, and this should have prompted a diligent search beyond making a few telephone calls.  It is common practice to submit HIPAA requests to medical centers when records are needed, and there was no good reason for plaintiff to stray from that practice here.  Factor one weighs in defendant's favor.

As to the second factor, importance of the precluded information, the rebuttal report is critical to plaintiff's case.  If Dr. Payne's rebuttal report were to be precluded, the jury would hear only defendant's experts with regard to causation. Those experts opine that plaintiff's claimed injury in the 2013 accident was actually a pre-existing condition resulting from the 2006

---

[2] See Zabrowski Aff. ¶ 7 ("In retrospect, better practice would have been to process a HIPAA authorization in any event, especially since it is apparent now that a letter from defense counsel's firm prompted a more thorough and successful search for Mr. Papiez's 2006 MRI"); Tr. at 37:5–6 ("Should he have processed authorization? Probably. Shouldn't he have issued a subpoena? Probably.").

7

accident, while Dr. Payne disputes those findings, concluding that the 2006 MRI "allows dramatic corroboration of the contention that the increase in size of the herniation at C6/7 occurred as a result of the traumatic [2013] event." (Payne Rebuttal at 3.) To preclude Dr. Payne's rebuttal report would foreclose the issue and remove it from the jury altogether. Factor two weighs in plaintiff's favor.

Factor three, prejudice to the opposing party as a result of having to prepare to address the new evidence, is perhaps the most important of the Softel factors. "The touchstone for determining whether to exclude an untimely export report is whether the party opposing their admission is prejudiced." Lore v. City of Syracuse, No. 00 CV 1833, 2005 WL 3095506, at *4 (N.D.N.Y. Nov. 17, 2005) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791 (3d Cir. 1994)). At this stage of the case, defendant still has ample opportunity to depose Dr. Payne regarding his opinions in the rebuttal report. Further, the absence of a trial date guarantees that defendant's counsel will not be impaired in preparing its defense by having to rush to depose additional experts. There is little, if any, prejudice to defendant caused by having to address Dr. Payne's late report. This factor thus weighs in plaintiff's favor.

Possibility of a continuance, the fourth factor, is not at issue here. I have already extended the discovery deadline once, and I would do so again if necessary. Depositions are still outstanding, and no trial date has been set. Factor four weighs in plaintiff's favor.

In sum, in light of the lack of prejudice to defendant, plaintiff will not be precluded from introducing Dr. Payne's rebuttal report into evidence. While plaintiff's failure to uncover and disclose the MRI was not "substantially justified," it does appear to be "harmless." See FED. R. CIV. P.37(c). By denying this motion, defendant will not be prejudiced. On the

8

other hand, granting this motion could be fatal to plaintiff's case. Such an extreme solution is not warranted.

Since the failure was unjustified, and requires defendant to conduct an additional deposition, I do find that a minimal sanction is appropriate. During oral argument, defendant requested an alternative sanction of an order requiring plaintiff to pay attorney's fees relating to a deposition of Dr. Payne. (See Tr. at 31:1–21.) I agree that this lesser sanction is warranted. "[A]t a minimum, it is appropriate, under Rule 37, to require a party that has not complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking both disclosure and discovery sanctions." Webb v. Zimmer, No. 14 CV 1106, 2018 WL 836366, at *8 (E.D.N.Y. Feb. 12, 2018) (citing Gateway, Inc. v. ACS Commercial Sols., Inc., No. 07 CV 6732, 2009 WL 10695887, at *8 (S.D.N.Y. Sept. 18, 2009)). Accordingly, plaintiff is ordered to pay defendant's counsel's attorney's fees related to the deposition of Dr. Payne, as well as Dr. Payne's fees for his preparation and appearance at the deposition.

## II. Motion to Preclude Dr. Merola from Testifying as an Expert and Narrow the Scope of Treating Physician Testimony

### A. Legal Standard

Federal Rule of Civil Procedure 26(a)(2) provides that "[i]n addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence," and that this disclosure (for expert testimony) must be "accompanied by a written report prepared and signed by the witness." FED. R. CIV. P. 26(a)(2). An advisory committee note to Rule 26(a)(2) clarifies that the report requirement "applies only to those experts who are retained or specially employed to provide testimony in the case or whose duties as an employee of the party regularly involve the giving of such testimony. A treating physician,

9

for example, can be deposed or called to testify at trial without any requirement for a written report." FED. R. CIV. P. 26(a)(2) advisory committee's note to 1993 amendment.

"The general rule is that treating physicians are fact witnesses or non-retained experts, whereas doctors 'retained for purposes of trial' who form their opinions based on 'knowledge acquired or developed in anticipation of litigation or for trial' are expert witnesses requiring an expert report." Shepler v. Metro-N. Commuter R.R., No. 13 CV 7192, 2016 WL 1532251, at *2 (S.D.N.Y Apr. 15, 2016) (quoting Mangla v. Univ. of Rochester, 168 F.R.D. 137, 139 (W.D.N.Y. 1996)). "Because courts are vested with an integral gatekeeping function under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), courts in this Circuit have drawn further distinctions regarding the range of acceptable testimony that a treating physician may offer as compared to the range that an expert may offer." Pierce v. City of New York, No. 16 CV 5703, 2017 WL 2623857, at *2 (E.D.N.Y. June 16, 2017).

"Courts in this Circuit have regularly held that treating physicians may testify as to opinions formed during their treatment, including causation, severity, disability, permanency and future impairments, without the obligation to submit an expert report." Manganiello v. Agostini, No. 07 CV 3644, 2008 WL 5159776, at *12 (S.D.N.Y. Dec. 9, 2008) (citing cases), aff'd, 612 F.3d 149 (2d Cir. 2010). The treating physician need not be formally designated as an expert. See FED. R. CIV. P. 26(a) advisory committee's note to 2010 amendment ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703 or 705. Frequent examples include physicians or other health care professionals . . . ."). However, "[t]he treating physician may not introduce information provided by other physicians to whom the

Plaintiff may have been referred nor may the doctor present any medical reports received from other physicians regarding the Plaintiff or opine on any information provided by another doctor." Spencer v. Int'l Shoppes, Inc., No. 06 CV 2637, 2011 WL 4383046, at *4 (E.D.N.Y. Sept. 20, 2011). Essentially, a treating physician is permitted to testify to any observation he or she has made with his five senses, as well as to the opinions he or she has formed as a result of these observations.[3]

Although a treating physician need not be designated as an expert in order to provide an opinion, the party offering the testimony is still bound to follow the timeliness requirements of Rule 26. To determine whether preclusion of a late expert report is an appropriate sanction, courts in the Second Circuit apply the Softel factors.

B. Analysis

Plaintiff's explanation for its failure to comply with the discovery requirements with respect to Dr. Merola's report is poor, and therefore weighs against plaintiff under the first Softel factor. As defendant notes, "there is no reasonable excuse" for plaintiff's expert designation of Dr. Merola "over two months after the deadline for such disclosure expired and after plaintiff expressly represented to this Court that Dr. Merola would not be designated as a Rule 26 expert." (See Merola Mot. ¶ 8.) The second factor, the importance of the precluded

---

[3] See also Motta v. First Unum Life Ins. Co., No. 09 CV 3674, 2011 WL 4374544, at *3 (E.D.N.Y. Sept. 19, 2011) ("[T]he key to what a treating physician can testify to without being declared an expert is based on *his* personal knowledge from consultation, examination and treatment of the Plaintiff, 'not from information acquired from outside sources.'") (internal citation omitted); Spencer, 2011 WL 4383046, at *4 (treating physician may "offer opinion testimony on diagnosis, treatment, prognosis and causation, but *solely* as to the information he/she has acquired through observation of the Plaintiff in his/her role as a treating physician limited to the facts in Plaintiff's course of treatment."); Hill v. McCoy, No. 06 CV 233, 2009 WL 673441, at *1 (D. Vt. Mar. 16, 2009) ("In this Circuit, the scope of [a treating physician's] testimony may include opinions about causation, prognosis or permanency, as long as the opinions are based on information learned during the course of treatment.").

11

information, also weighs against plaintiff. As discussed further below, Dr. Merola will still be permitted to testify at trial and offer his opinions as to causation and prognosis. The only difference between the testimony that Dr. Merola will be limited to and the expert report is the latter's express rebuttal of the opinions offered by defendant's witnesses. Factor three, prejudice to the opposing party, also weighs in defendant's favor. While plaintiff made a timely submission of Dr. Merola's initial records that satisfied the requirements of Rule 26, it would be unfair to defendant to now allow plaintiff's treating physician to substantially expand the scope of his testimony after he was able to review defendant's expert reports. Whereas in the case of Dr. Payne, defendant's only prejudice would be the cost of taking an additional deposition, here defendant would be prejudiced by having to confront a witness who is clearly planning to testify as to a high damage amount, and who came to this opinion only after having the chance to review each of defendant's expert reports. This is not the type of "harmless" error envisioned by Rule 37(c). Factor four, the possibility of a continuance, is a non-issue, as discussed earlier.

Based on this analysis, I find that Dr. Merola's expert report should be precluded, and that he should not be permitted to testify as an expert. However, I disagree with defendant's arguments as to the scope of Dr. Merola's testimony as plaintiff's treating physician. Defendant claims that the court must limit the scope of Dr. Merola's testimony regarding causation, prognosis, and future treatment, as "these are the areas within the realm of expert opinion." (Reply Mem. at 5.) However, as explained, "[i]t is generally settled in this Circuit that a treating doctor's testimony may properly include opinions about causation, prognosis or permanency, as long as the opinions are based on information learned during the course of treatment." Mikulec v. Mercedes-Benz USA, L.L.C., No. 05 CV 6069, 2009 WL 10681943, at *4 (W.D.N.Y. Sept. 29, 2009) (citing cases). After reviewing the relevant case law, it is clear that there are only two

12

key limitations on treating physician testimony. First, a non-expert treating physician may not testify as to opinions he or she formed after the fact, or, in the words of one court, "statements regarding causation and prognosis…formed in anticipation of litigation." Kent v. Katz, No. 99 CV 189, 2000 WL 33711516, at *2 (D. Vt. Aug. 9, 2000). "In the absence of any expert report, however, [the treating physician]'s testimony regarding causation must be limited to opinions that he actually formed during the course of treating [plaintiff]." Green v. McAllister Bros., Inc., No. 02 CV 7588 & 03 CV 1482, 2005 WL 742624, at *13 (S.D.N.Y. Mar. 25, 2005). Second, a treating physician may not testify as to opinions he or she formed on the basis of other physicians' observations of a patient. See Shepler, 2016 WL 1532251, at *2.

Although "treating physicians may have an opinion as to the degree of injury in the future . . . . there is a significant difference between noting that an injury will not heal itself—something treating physicians tell patients every day—and attempting to quantify or otherwise describe the amount of pain a patient will suffer at some specific point in the distant future, as an expert witness might be retained to do." Smith v. Crown Lift Trucks, No. 04 CV 2866, 2007 WL 1467970, at *5 (S.D.N.Y. May 16, 2007) (internal citations and quotation marks omitted). For example, statements that plaintiff "will be a candidate for a revision surgical intervention to the cervical spine at a cost of $100,000 for adjacent symptomatic herniated segments which are all either casually [sic] connected to the 2013 accident or are as a result of the significant acceleration and worsening of symptomatic herniations" (Merola Report at 7) go beyond the scope of treating physician testimony. Similarly, Dr. Merola states that "[i]t is not unusual for multilevel cervical spinal fusions to undergo an adjacent segment issue as a consequence of an increase in stress factors at the proximal junctional segment and indeed Mr. Papiez has experienced this and will indeed require revision surgical intervention to the neck." (Merola

13

Report at 6.) This prognosis also exceeds the scope of permissible treating physician testimony. Dr. Merola may testify to his observations of plaintiff, but not to what may be usual or unusual in the field of orthopedic surgery.[4]

By contrast, Dr. Merola testifies that "[t]he indications for surgery were that Mr. Zbigniew Papiez is a 45-year-old man who had a history of prior anterior cervical discectomy and spinal fusion of the C5-C6 segment that was doing quite well up until he sustained a new trauma to his neck that produced an acute herniation with cord injury and nerve root injury at C6-C7 . . . . Surgical intervention was indicated and warranted at that time in order to prevent further neurological deterioration." (Id. at 3.) In this statement, Dr. Merola confined his conclusion that surgical intervention was warranted to his own observations of plaintiff; thus, this is permissible causation testimony.[5]

In addition, Dr. Merola may not testify as to opinions formed on the basis of other physician's opinions or reports. I find only one instance of such testimony in his expert report, which dates to an April 4, 2017 visit. Dr. Merola notes: "I had an opportunity to consult with Dr. Podhorodecki who had also indicated to me that Mr. Papiez's condition had gotten worse over time." (Id at 2.) This will not be allowed during trial. Dr. Merola will, however, be permitted to testify to his own opinions regarding plaintiff's condition, which were formed on the basis of

---

[4] The same line of analysis applies to Dr. Merola's conclusion that "[w]ithin a reasonable degree of medical certainty, the injury of October 31, 2013 has directly resulted in a subjacent post-traumatic symptomatic herniations [sic] of the C6-C7 and C7-T1 segments which subsequently underwent surgical intervention at the C6-C7 level in order to prevent further neurological deterioration." (Merola Report at 7.)

[5] This is another example of appropriate treating physician testimony from the report: "[Plaintiff] was advised that should this condition progress over the course of time future surgical intervention would be indicated and required . . . ." (Merola Report at 5.)

14

reliable diagnostic scans, even if Dr. Merola was not the one to perform such scans himself. These references do not exceed the permissible scope of treating physician testimony.

## CONCLUSION

For the aforementioned reasons, defendant's first motion is denied, while its second motion is granted in part and denied in part. Although plaintiff's disclosure of Dr. Payne's supplemental report was untimely, I find that this violation was harmless and will therefore not preclude its admission. However, as an alternative sanction, plaintiff is hereby ordered to pay all reasonable attorney's fees arising from defendant's deposition of Dr. Payne.[6] Defendant's second motion is granted insofar as Dr. Merola's expert report will be precluded in its entirety. Dr. Merola will not be testifying as an expert witness in this case, but only as a treating physician. However, the motion is denied in part insofar as defendant asserts an overly narrow reduction in the scope of Dr. Merola's permissible testimony as a treating physician. At trial, the scope of Dr. Merola's testimony must conform with the principles discussed above. Finally, the parties are hereby directed to meet and confer and submit to the court a proposed schedule for the remainder of discovery by April 30, 2018.

SO ORDERED.

Dated: Brooklyn, New York
      April 20, 2018

                                        /s/
                                ROBERT M. LEVY
                                United States Magistrate Judge

---

[6] If the parties cannot agree on a reasonable fee for this work, they may submit their dispute to the court for resolution.