# EXHIBIT B



Paul L. Kuflik, MD
*Associate Professor*
*Orthopaedic Spine Surgery*

*Mailing and Office Address*
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

January 25, 2017

Michael Giacopelli Esq.
Lewis, Brisbois, Bisgaard & Smith
77 Water Street, Suite 2100
New York, New York 10005

Re: Zbigniew Papiez
Date of Injury: 10/31/2013

Dear Mr. Giacopelli,

I performed an independent medical examination with regard to the spine on Mr. Papiez at my office at 5 East 98th Street, New York City, New York 10029 at approximately noon on December 15, 2016. A Polish interpreter Mr. Spinner from Starr Interpreters was present throughout. Mr. Zaborowski a representative of the plaintiff's attorney Edelman and Edelman was present as well. Mr. Papiez's NYS driver's license was used for identification.

The history as obtained from Mr. Papiez is that he is a 47-year-old right hand dominant gentleman who was shopping in Home Depot on October 31, 2013 when brick(s) fell on his back. There was no loss of consciousness. He had the immediate onset of pain in the upper spine and neck. He was knocked down to his knees. He was taken by 911 ambulance to Elmhurst Hospital emergency where he was evaluated and treated. He was discharged home and told to follow-up with his primary care doctor. He was not employed at the time, and he has not been employed since the accident. He was previously a contractor. He was treated with injections and epidural steroid injections and ultimately underwent surgery by Dr. Andrew Merola approximately one year after the event. He does not recall the exact date. The surgery was performed at Columbia Presbyterian Downtown Manhattan. Prior to the surgery he had pain in the back of his neck, which he rates as an 8 to 9 on a scale of 0 to 10. The pain radiated to both shoulders, both hands, and arms with numbness in both of his hands. Following the surgery the pain has lessened so that it is now a 4 to 5 on a scale of 0 to 10, but he remains with numbness and tingling of the fourth and fifth digits of his right hand. He denies any problems with his dexterity or fine motor control. He attended physical therapy post operatively, but that stopped one to two weeks ago. He exercises on his own. Prior to the surgery he was treated by Dr. Podhorodecki. Currently he has pain in the back of his neck that he rates as a 4 to 5 on a scale of 0 to 10. There is numbness in the radial fourth and fifth digit of

Re: Zbigniew Papiez
Date of Injury: 10/31/2013

1



**Paul L. Kufilk, MD**
*Associate Professor*
*Orthopaedic Spine Surgery*

*Mailing and Office Address*
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

the right hand. He denies any problems with the remainder of his spine. He wears a soft collar because he claims it makes him feel better and safer. He feels that the collar "suits him". He claims that since his surgery he feels like there is something stuck in his throat.

Past medical history is significant for a work related injury eight years prior to this accident. He was treated with an anterior cervical discectomy and fusion by Dr. Merola. He does not recall when the surgery was performed. He claims that he got all better following that surgery with no residual issues, though he never returned to work. He claims he did not return to work because his wife started a preschool and he felt that he should be available to help out. He said for approximately four to five years after his first surgery he did not do any work around the house, but then started to resume doing work around the house and was functioning almost normally, he just chose not to return to work. His pain is aggravated by sleeping on his back or sitting in a chair. The only thing that makes him feel better is medications and an ointment that he puts on his back.

He can sit comfortably usually for 5 minutes with a maximum of 60 minutes; he can stand for 5 to 10 minutes and walk 3 or 4 blocks. He denies any bladder or bowel dysfunction. He had hernia surgery approximately 25 years ago, and left lung surgery greater than 10 years ago. He denies any other traumatic events. Past medical history is otherwise negative. He denies any other medical problems.

Current medications are Percocet 4 tablets each day, Gabapentin 300 mg at night, occasionally taking 600mg, and an ointment which he puts on the back of his neck. He denies any allergies to medications. He smokes one pack per day. He does not consume alcohol. He is able to perform his activities of daily living. He is able to drive short distances of 10 to 15 minutes.

Mr. Paplez was instructed before the examination and during the examination to report any pain and to avoid performing any maneuvers that he felt could worsen his symptoms or condition. He indicated that he understood this. Opportunities for breaks during the examination were offered. The examination was completed without complaints or signs of injury.

On examination he arrived wearing a soft cervical collar that he removed for the examination. He is in no apparent distress. He is a pleasant, cooperative gentleman. He moves about the exam room without any difficulty. He gets up

Re: Zbigniew Paplez
Date of Injury: 10/31/2013

2



Paul L. Kuflik, MD
*Associate Professor*
*Orthopaedic Spine Surgery*

*Mailing and Office Address*
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

and down from the examination table without difficulty. He independently changed into a gown for the examination. He is 5'8" tall and weighs 175 pounds. He is a well-nourished, well-developed gentleman. He has a normal gait. He is able to toe walk, heel walk and demonstrate tandem gait. On active range of motion testing of the lumbar spine he will bend forward 80 degrees, extend 40 degrees, has 20 degrees of right and left lateral bending, and 30 degrees of right and left rotation. His motion is fluid and unrestricted. On active range of motion testing of the cervical spine he will demonstrate 45 degrees of flexion, 20 degrees of extension, 20 degrees of right and left lateral bending, and 40 degrees of right and left rotation. Motion is restricted by subjective complaints of pain. A goniometer was used to assist in measurement.

Normal range of motion lumbar spine:

Flexion 75-90 degrees
Extension 25-30 degrees
Lateral right bending 30 degrees
Lateral left bending 30 degrees
Rotation to the right 30 degrees
Rotation to the left 30 degrees

Normal range of motion of the cervical spine:

Flexion 45-60 degrees
Extension 45-60 degrees
Lateral bending to the right 40-45 degrees
Lateral bending to the left 40-45 degrees
Lateral rotation to the right 70-90 degrees
Lateral rotation to the left 70-90 degrees

He has two parallel well-healed non-tender transverse incisions in the base of his neck on the left side. They are each 3 cm in length. He informs me the lower one is the newer incision. Motor examination of the upper and lower extremities is 5/5. Sensation is diminished in the right upper extremity in a global non-dermatomal fashion. There is no evidence of clonus, Hoffmann's or Babinski's, or Spurling's sign. Straight leg raising is negative bilaterally. Deep tendon reflexes are 1 plus in the upper extremities, 3 plus in the lower extremities. There is no evidence of atrophy. There is no para spinal muscle spasm or tenderness.

Re: Zbigniew Papiez
Date of Injury: 10/31/2013

3

Case 1:15-cv-02845-ERK-RML   Document 21-12   Filed 09/15/17   Page 32 of 40 PageID #: 205



**Paul L. Kulik, MD**
*Associate Professor*
*Orthopaedic Spine Surgery*

*Mailing and Office Address*
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

I have reviewed the following medical records:

1. Examination before trial of Mr. Papiez 02/16/16.
2. Medical records All County Radiology.
3. Medical records New York Ortho, Sports Medicine & Trauma.
4. Prehospital care FDNY report 10/31/13.
5. Medical records Andrew Merola, M.D.
6. Verified bill of particulars.
7. Medical records Dr. Grimm MD.
8. Medical records Dr. Podhorodecki MD.
9. Medical records Elmhurst Hospital Center.
10. Medical records Green Point Diagnostic Imaging.
11. Medical records Markow Apteka Pharmacy.
12. Medical records New York Presbyterian Hospital lower Manhattan.
13. Medical records Park Place Medical Imaging.
14. Medical records Personal Health Imaging.
15. Medical records AMR Nurse Consultants Kimberly Kushner RN
16. Expert report J. Kahn MD
17. Expert report Vocational Economics

I reviewed the following imaging studies.

1. MRI of the cervical spine performed April 29, 2015 at All County LLC.
2. Ap and Lat x-ray of the cervical spine Greenpoint Radiology 11/19/14
3. Ap and Lat x-ray of the cervical spine Greenpoint Radiology 8/6/15.
4. MRI Cervical Spine Park Place Medical Imaging 12/9/13.

Prehospital care report summary dated October 31, 2013 indicates Mr. Papiez was complaining that his neck hurts. "He was complaining of neck pain after a brick paver fell on him". He was placed in a cervical collar and long board. He was noted to be neurologically intact. There were no visible injuries. His vitals were stable.

The Elmhurst Hospital emergency room records indicate that Mr. Papiez arrived via ambulance. He was complaining of neck pain after bricks fell on him. There was no loss of consciousness. He reported that he takes Vicodin daily for the last five years after a previous fall at work and cervical spine fusion surgery. Examination revealed that his neck was supple. There was no cervical, thoracic

Re: Zbigniew Papiez
Date of Injury: 10/31/2013

4



Paul L. Kuflik, MD
Associate Professor
Orthopaedic Spine Surgery

*Mailing and Office Address*
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

or lumbar spine tenderness. He was able to turn his head left and right greater than 45 degrees. A CT scan of the brain was noted to be normal. He had no midline cervical tenderness and full range of motion of his neck. At the time of discharge from the emergency room his pain level was a 1 on a scale of 0 to 10. It would appear his complaints and findings in the cervical spine were so minimal imaging studies of the neck were not performed.

On 11/6/2013 Dr. Crone notes an MRI performed on May 6 2006 demonstrated a right C5-C6 central right herniated disc, small central herniation at C6-C7 central subligamentous protrusion C4-C5.

I reviewed a report of an MRI of the cervical spine performed on December 9, 2013 at Park Place Medical Imaging. The report describes previous surgery at the C5-C6 level. There is a right foraminal para-sagittal herniation at C6-C7 with hemi cord compression and impingement on the exiting C7 and C8 nerve roots. I reviewed these images. I do not appreciate the right foraminal para-sagittal disc herniation mentioned in the report. There is neither hemi-cord compression appreciated nor C7 or C8 nerve root impingement. There is no evidence of acute injury. There is a shallow right disc – osteophyte complex at C6-C7 that is pre-existing, of chronic duration and not traumatically induced. It is not causing spinal cord or nerve root compression.

Dr. Merola's records from prior to this accident indicate that Mr. Papiez had been involved in a work related injury. He noted in November 2007 that Mr. Papiez had a severe and unremitting mechanical axial neck pain with radiation into both upper extremity C6 distributions. He performed an anterior cervical discectomy and fusion at the C5-C6 level on 12/11/07. On July 14, 2008, Dr. Merola notes Mr. Papiez has adjacent segment disc herniations, indicating the C6-C7 disc pathology was present already in July 2008. He notes Mr. Papiez is totally disabled. On February 16, 2009, and on June 28, 2010 he notes that Mr. Papiez continues to have severe chronic neck pain, marked restriction of motion with 20 degrees of flexion, 0 degrees of extension, lateral bending to the right of 25 degrees and to the left of 15 degrees, rotation to the right of 10 degrees and rotation to the left of 5 degrees. He has difficulty in performing his activities of daily living, and finds that he has a total permanent disability. He had numbness tingling and absent sensation in the C4, C5 and C6 distributions. This would include the distribution of his current complaints of numbness tingling in his right 2nd and 3rd digits. Dr. Merola notes residual neurologic deficits, the need for chronic narcotic medication, assistance with activities of daily living, and chronic

Re: Zbigniew Papiez
Date of Injury: 10/31/2013

5



Paul L. Kuflik, MD
Associate Professor
Orthopaedic Spine Surgery

Mount Sinai

*Mailing and Office Address*
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

pain. In 2010, three years prior to the event on 10/31/13, Dr. Merola suggests further cervical spine surgery may very well be needed.

Dr. Podohorecki notes in July 2013 and earlier in the month in October 2013 Mr. Papiez has chronic cervical radiculopathy and is requiring chronic narcotic medication. He has been under her care essentially continuously since 2006 for his back, neck and cervical radiculopathy. In April 2005, Dr. Podohorecki notes issues at the C6-C7 level. The pharmacy records indicate he was already on long-term high dose narcotic pain medication prior to the event in 2013.

I reviewed the operative report dictated by Dr. Merola on September 3, 2014. Preoperative diagnosis was disc herniation C6-C7 segment producing significant severe and progressive upper extremity C7 radiculopathy with cord irritation, evidence of myelopathy, history of prior ACDF C5-C6 segment, acute onset herniation radiculopathy and myelopathy. The postoperative diagnosis was the same. The procedure was an anterior cervical discectomy C6-C7 with partial corpectomy at C6, partial corpectomy at C7, decompression of spinal nerve roots at C6-C7, placement of biomechanical device at C6-C7, placement of anterior locking plate screw implant at C6-C7, autogenous bone graft, allograft bone grafting, intraoperative fluoroscopy, intraoperative evoked potential monitoring, exploration of spinal fusion at C5-C6. Inter operatively Mr. Papiez was found to have a solid arthrodesis at C5-C6 with a disc herniation at C6-C7. A review of the post-operative x-rays does not show evidence of hemi-corpectomies having been done but rather a routine anterior cervical discectomy and fusion. It would appear the previously applied plate at C5-C6 was left in place making the exploration at C5-C6 a rather minimal undertaking.

I reviewed a report of an MRI of the cervical spine performed April 29, 2015 at All County LLC. The report indicates there was a previous anterior cervical discectomy and fusion noted at C5-C6 and demonstrated new surgery at C6-C7. I reviewed these images as well. Other than the evidence of the surgery at C6-C7, I do not appreciate any significant changes compared to the MRI study performed on December 9, 2013.

A report of a post operative x-ray performed August 6, 2015 at Green Point Diagnostic Imaging showed evidence of the surgery from C5 to C7 without any other significant findings. The study does not show a hemi-corpectomy having been performed.

Re: Zbigniew Papiez
Date of Injury: 10/31/2013

6



Paul L. Kufilk, MD
Associate Professor
Orthopaedic Spine Surgery

Mailing and Office Address
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

I disagree with the report from Ms. Kushner. There is no causally related indication for continued Physiatric care including injections, nerve blocks, spinal stimulator, morphine pump, physical therapy, TENS unit, assistance with ADL's, transportation assistance, or household assistance. Mr. Papiez was already on high dose narcotic pain medication prior to the 10/31/13 event. To the extent he may need higher doses in the future that is a consequence of the natural history of treating chronic pain with high dose narcotics. As tolerance develops, higher doses are needed. Mr. Papiez has been taking narcotics chronically since at least 2006.

In summary, Mr. Papiez was involved in an accident at Home Depot when he was struck on the back of his upper back or neck. Examination at that time revealed no visible sign of injury, unrestricted full range of motion of the cervical spine and he was neurologically intact. His pain in the Elmhurst ED at discharge was a 1 on a scale of 0 to 10. Findings were most consistent with a contusion. He is status post a work related injury to his neck in 2006 ultimately treated with an anterior cervical discectomy and fusion in December 2007. It is well documented he already had a disc herniation at C6-C7 in 2006. He never returned to work following that injury. He was still receiving medical treatment for a cervical radiculopathy and requiring narcotic pain medication on a daily basis at the time of the event on 10/31/13.

His presentation is not consistent with a new onset acute disc herniation at C6-C7 or even exacerbation of a pre-existing asymptomatic disc herniation at C6-C7. He had virtually no significant findings in the Emergency facility following the injury. The history and cervical MRI performed after the event on 10/31/13 is most consistent with adjacent segment disease at C6-C7 rather than an acute injury. Prior to this injury it is well documented that his range of motion was markedly diminished, and that he was permanently disabled. He had virtually identical complaints and physical findings prior to 10/31/13 as he does now. Approximately three years following his first surgery in 2007, he was found to have marked restriction of motion of the cervical spine and a permanent total disability. He had absent sensation with numbness and tingling in the identical distribution as now. One would not anticipate a change in his condition between 2010 and 2013 if he has the complaints and findings described nearly three years post-surgery, i.e. the changes described in 2010 are permanent. Additionally, he was been under the continuous care of a Physiatrist for cervical radiculopathy including high dose narcotic pain medication right up to immediately prior to this injury.

Re: Zbigniew Papiez
Date of Injury: 10/31/2013

7



Paul L. Kuflik, MD
Associate Professor
Orthopaedic Spine Surgery

Mailing and Office Address:
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

Objectively there was no change in his condition from before 10/31/13 to after. His objective complaints and physical findings were unchanged from before to after. Currently objectively, he is no worse off than he was prior to the event on 10/31/13. He is still requiring chronic pain medication as he was prior to this alleged accident. His complaints now are subjective. He is neurologically intact. His diminished range of motion is subjective and essentially identical to what it was prior to this event. The soft collar that he chooses to wear likely contributes to his issues by unnecessarily restricting motion and contributing to his stiffness, and weakening his musculature.

His complaints, physical findings and the surgery performed are more consistent with a diagnosis of adjacent segment disease and chronic radiculopathy than a traumatic injury. Mr. Papiez has chronic pain. He had complaints out of proportion to the objective information both before and after the event on 10/31/13. There is no causally related indication for further treatment at this time. There is no objective change in his disability as a consequence of the event on 10/31/13. He is no more disabled now than he was prior to this event. There is no medical contra indication relative to the spine to him participating in activities without restriction.

I, Paul Kuflik MD., being a Diplomate of the American Board of Orthopedic Surgeons, am duly licensed to practice medicine in the State of New York pursuant to CPLR, section 210.6 and hereby affirm under the penalties of perjury the foregoing is true to the best of my knowledge except as to those matters stated on information and belief, and as to those matters I believe to be true. The above claimant was examined according to the restrictive rules concerning an independent medical examination. It is therefore understood no doctor patient relationship exists or is implied by this examination.
The claimant is examined in reference to that specific complaint emanating from the original injury. Any other medical conditions, which were either unreported or felt to be unrelated to the original injury, are considered to be beyond the purview of this examination.

Sincerely yours,

*[signature]*

Re: Zbigniew Papiez
Date of Injury: 10/31/2013

8



Paul L. Kuflik, MD
*Associate Professor*
*Orthopaedic Spine Surgery*

*Mailing and Office Address*
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

Paul Kuflik MD
Spine Surgery
Associate Professor of Orthopedic Surgery
Mount Sinai Hospital and School of Medicine
5 East 98th Street, Fourth floor
New York NY 10029
Phone  212 241 1072
Fax       646 537 9449
paul.kuflik@mountsinai.org

Re: Zbigniew Papiez
Date of Injury: 10/31/2013

9



Paul L. Kuflik, MD
*Associate Professor*
*Orthopaedic Spine Surgery*

*Mailing and Office Address*
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

March 28, 2017

Michael Giacopelli, Esq.
Lewis Brisbois Bisgaard & Smith
77 Water Street, Suite 2100
New York, New York 10005

**Re: Zbigniew Papiez**
Date of Injury: 10/31/2013

Dear Mr. Giacopelli:

This is an addendum to the previously submitted report dated January 25, 2017.

I have been provided with the actual images of the MRI of the cervical spine performed on May 6, 2006. Allowing for the fact that the location of the axial and sagittal slices is never exactly the same from one MRI to another, there are no changes on the Cervical spine MRI performed on May 6, 2006 and the Cervical spine MRI performed on December 9, 2013. There was no nerve root compression at C6-C7 on the study in 2006, and there was no nerve root compression at C6-C7 on the study in 2013. The studies are essentially identical.

I, Paul Kuflik MD., being a Diplomate of the American Board of Orthopedic Surgeons, am duly licensed to practice medicine in the State of New York pursuant to CPLR, section 210.6 and hereby affirm under the penalties of perjury the foregoing is true to the best of my knowledge except as to those matters stated on information and belief, and as to those matters believe to be true.

Sincerely yours,

Paul Kuflik MD
Spine Surgery



Paul L. Kuflik, MD
*Associate Professor*
*Orthopaedic Spine Surgery*

*Mailing and Office Address*
Icahn School of Medicine at Mount Sinai
5 East 98th Street, 4th Floor, Box 1188
New York, NY 10029-6574
T 212-241-1072
F 646-537-9449

Associate Professor of Orthopedic Surgery
Mount Sinai Hospital and School of Medicine
5 East 98th Street, Fourth floor
New York, NY 10029
Phone 212 241 1072
Fax 646 537 9449
paul.kuflik@mountsinai.org